No. 89-42

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

LARRY DUANE CHRISTOFFERSON,

        Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bell & Marra; Barbara E. Bell, Great Falls, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        John Paulson, Asst. Atty. General, Helena
        Patrick L. Paul, County Attorney, Great Falls, Montana
        Stephen Hudspeth, Deputy County Attorney, Great Falls

Submitted on Briefs: June 1, 1989

Decided: June 27, 1989

Filed:

_____
              Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant was found guilty by jury trial in District Court, Eighth Judicial District, Cascade County, of the offenses of felony burglary, in violation of section 45-6-204(1), MCA, and felony sexual intercourse without consent, in violation of section 45-5-503(1), MCA. Defendant was sentenced on November 9, 1988, to the Montana State Prison to concurrent terms of ten years for each offense with five years suspended on each offense. Christofferson appeals only the issue of the burglary charge. We affirm.

The issue here is whether the District Court erred in denying defendant's motion to dismiss the burglary charge at the close of the State's evidence.

In December 1987 D.F. was residing in a split level home with her three children, daughter K.F., daughter R.F., and son, M.F. Also living in the house was G.T., who attended vocational school in Great Falls.

Defendant was an acquaintance of D.F., and he had been over to her house on several occasions. On Friday, December 4, 1987, D.F. left Great Falls for the weekend. She took R.F. and M.F. with her and left K.F. and G.T. at home. Defendant and D.F. had a conversation before she left for Livingston. The evidence was disputed, but defendant claims that he volunteered to check on the children in Great Falls. According to him, D.F. did not say yes or no. D.F., on the other hand, stated that she told him not to bother checking on the children.

Defendant came from the bars in the Great Falls area to the residence in the early hours of Saturday morning. G.T. and several friends were watching television in the downstairs family room when Christofferson came calling. G.T. testified that he recognized defendant from his previous visits and defendant told G.T. that he was checking on them because D.F. had sent him.

Defendant stayed for nearly an hour, started to leave and then dropped a beer bottle on the floor. He cleaned up the spill, and G.T. testified that defendant stated he was leaving and went upstairs. G.T. heard the front door close.

G.T. came upstairs about one-half hour later and found defendant still in the house. G.T. asked defendant what he was doing and Christofferson assured G.T. that he was going to finish his beer and then leave. G.T. left to go to the grocery store and when he returned he did not see defendant. He returned downstairs to the family room and was shortly thereafter alarmed by a loud crash. K.F. ran downstairs calling for his help. G.T. went upstairs and saw defendant in the yard with his pants unzipped.

K.F. had been upstairs watching television. After friends of hers left, she changed into her pajamas (a tee shirt and underwear) and went to lie on the couch and watch television before falling asleep. She testified that she woke up when she felt someone's hand in her underwear. She felt a finger penetrate her vagina. She was turned on her back and the male figure performed oral sex on her.

K.T. knew that it was a male and she could smell alcohol, but it was too dark to see who the person was. When the male committed oral sex, she kicked him and knocked him down and into a table. At that point, she got up and ran downstairs toward G.T.

The only issue which challenges the decision of the District Court is whether the District Court erred in denying defendant's motion to dismiss the burglary charge at the close of the State's case-in-chief.

On appeal, defendant does not contend that there was insufficient evidence to support his conviction of sexual intercourse without consent. He does, however, appeal the decision of the District Court that there was sufficient evidence regarding the burglary charge to go to the jury for its consideration.

3

The standard of review is: "The decision whether to dismiss the charge or direct a verdict of acquittal lies within the sound discretion of the trial court and will be disturbed on appeal only when abuse is shown." State v. Just (1979), 184 Mont. 262, 277, 602 P.2d 957, 965; cited in State v. Goltz (1982), 197 Mont. 361, 372, 642 P.2d 1079, 1085; State v. Keil (Mont. 1988), 751 P.2d 680, 45 St.Rep. 532; State v. Matson (Mont. 1987), 736 P.2d 971, 44 St.Rep. 874. Based upon section 46-16-403, MCA, which states that the District Court may dismiss an action and discharge the defendant, "[w]hen, at the close of the state's evidence . . . the evidence is insufficient to support a finding or verdict of guilty," we have said that a verdict of acquittal may be directed in favor of the defendant only if no evidence exists upon which to base a guilty verdict. State v. Courville (Mont. 1989), 769 P.2d 44, 46 St.Rep. 338; State v. Matson, supra.

The evidence presented by the State to prove the burglary charge was established through the testimony of G.T. G.T. testified that when defendant appeared at the residence, he gained entry by telling G.T. that D.F. had told him (defendant) to check in on G.T. and K.F. D.F., however, stated that she told him not to bother. Defendant acknowledged at trial that D.F. did not tell him to go to the house. The defendant gained entry into the house by deceit.

After being in the house, defendant twice told G.T. that he was leaving. The first time Christofferson went upstairs, and G.T. heard the front door close. The second time was when G.T. found Christofferson still in the house some time later, asked him what he was doing there, and was told by defendant that he was on his way out.

Even after this, defendant continued to stay, committing the act of sexual intercourse without consent upon K.F.

Burglary is defined in section 46-6-204, MCA, and provides:

4

> (1) A person commits the offense of burglary
> if he knowingly enters or remains unlawfully
> in an occupied structure with the purpose to
> commit an offense therein.

In the recently-decided case of State v. Courville, supra, we were faced with a situation similar to that here. In Courville, it was disputed whether defendant was invited or entered unlawfully. The victim did not remember inviting defendant into her house but testified that she did not mind if he stayed to sleep on the couch. The victim went upstairs to her room and was later choked and sexually assaulted by the defendant.

This Court, in Courville, pointed out that the burglary statute was written in the disjunctive, that is, a person commits the offense of burglary if he "enters or remains unlawfully." Defendant contends that he was initially invited into the house. Although this jurisdiction has not had previous opportunity to consider whether entry by fraud, deceit, or pretense is an "unlawful entry," other jurisdictions have. The Kansas Supreme Court held in State v. Maxwell (Kan. 1983), 672 P.2d 590, that entry into a dwelling obtained by fraud, deceit, or pretense is an unauthorized entry for the purposes of burglary. We hold that the defendant entered by deceit and was properly found guilty of burglary.

Regardless of whether Christofferson entered unlawfully, there was sufficient evidence to show that he remained unlawfully. In Courville, we looked to State v. Watkins (1974), 163 Mont. 491, 518 P.2d 259, and State v. Mathie (1982), 197 Mont. 56, 641 P.2d 454, where we stated: "when a person exceeds the limits of his privilege by remaining on the premises longer than is permitted, he thereby transforms his originally invited presence into a trespass that can form the basis of a burglary charge."

The record establishes that defendant did not have the privilege of entering D.F.'s residence on December 4, 1987, but,

5

even if he had entered with the privilege of doing so, he remained unlawfully in the house when he committed the offense of sexual intercourse without consent upon the person of K.F.

We hold that there was no abuse of discretion by the District Court in denying defendant's motion for a directed verdict regarding the burglary charge. There was sufficient evidence to support the submission of the charge of burglary to the jury for its determination.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

6