No. 88-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

CHARLES MATTHEW FELDT,

        Defendant and Appellant.

'89 OCT 19 AM 9 50

FILED

ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael R. Tramelli, Great Falls, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
James Yellowtail, Asst. Atty. General, Helena
Patrick Paul, County Attorney; Stephen Hudspeth, Deputy,
Great Falls, Montana

Submitted on Briefs:  July 20, 1989

Decided:  October 19, 1989

Filed:

_____
Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Defendant, Charles Matthew Feldt, appeals his January 12, 1988, bench conviction in the Eighth Judicial District Court, Cascade County, for burglary and theft. The Honorable Joel G. Roth sentenced Feldt to serve five years for burglary and five years for theft, with the sentences to run concurrently. The imposition of both sentences was suspended. Feldt appeals the conviction of burglary. We reverse.

The issue on appeal is stated as follows: (1) Whether the trial court erred in finding that the defendant entered his employer's premises "unlawfully," thereby committing burglary under § 45-6-204(1), MCA.

On the morning of April 27, 1987, the manager of T. C. Foods, a convenient store in Great Falls, Montana, was called to the store by the morning clerk. Upon arrival, the manager found a set of keys in the door, subsequently determined to have been issued to defendant, Feldt, an employee at T. C. Foods. The manager discovered $1,459 was missing from the safe. In addition, the manager found a note posted on the cash register which stated, "I know you trusted me, but I couldn't handle it at home. I am sorry. If you want, you can try and get the money out of my car or bike. Chuck."

On April 28, 1987, the defendant turned himself in to the Great Falls police department. He gave the police a bag containing $1,219 at the time of his surrender. He confessed to entering the store after hours by means of his keys, taking the money and leaving the note on the cash register.

At trial, the manager testified that all employees were given keys to the store and access to the store safe. The defendant testified that he was required to open and close

the store and he was permitted access to the store's safe. According to both the manager and the defendant, the manager allowed employees to enter the store after business hours for any proper purposes. The evidence fails to disclose, from the State or from the defendant, that when the store key was delivered to Feldt, any limitation, written or oral, was placed upon his use of it, or upon his access to the safe.

## I.

Whether the trial court erred in finding that the defendant entered his employer's premises "unlawfully" thereby committing the act of burglary under § 45-6-204(1), MCA?

Section 45-6-204(1), MCA, defines burglary as follows:

A person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein . . .

"Enters or remains unlawfully" is defined in § 45-6-201, MCA, which reads in pertinent part:

A person enters or remains unlawfully . . . when he is not licensed, invited, or otherwise privileged to do so.

This Court in State v. Starkweather (1931), 89 Mont. 381, 297 P. 497 held that an entry made by one who is licensed or privileged to be on the premises is not unlawful under the burglary statute. The Court in Starkweather stated: "There is no breaking in or entering a house or room and therefore, no burglary, if the person who enters has a right to do so." Starkweather, 297 P. at 498. To constitute a burglary the nature of the entry must itself be a trespass. Starkweather, 297 P. at 498.

This Court in Starkweather, focused on whether there was a limitation upon the defendant's right to enter a pool hall. In Starkweather, the Court found no limitation on the

- 3 -

defendant's right to enter the pool hall. This case turns on the same issue, that is whether there is any limitation on Feldt's right to enter T. C. Foods. The defendant Feldt was given permission to enter T. C. Foods where he was employed. As an employee of T. C. Foods, the manager gave Feldt a set of keys to enter the store and provided Feldt with access to the safe. In issuing the keys, the manager provided Feldt with authority to enter the premises at any time. The record reveals no limitations to the defendant's right to enter the store. However, the manager did testify at trial that Feldt could only enter the store after it was closed for proper purposes. Despite the manager's testimony, Feldt could enter T. C. Foods at any time day or night.

Under this Court's holding in Starkweather, and §§ 45-6-204 and 45-6-201, MCA, the defendant can not be convicted of burglary. He lawfully entered the building after closing hours with keys provided by the manager of T. C. Foods. Feldt did not trespass when he entered T. C. Foods. His keys granted him authority to enter T. C. Foods after hours.

The State argues that Feldt abused his privilege to enter T. C. Foods after hours, when he entered for the improper purpose to steal the money from the safe. The State further contends that Feldt's improper entry into T. C. Foods after hours transforms his original permissible entry into a trespass that can form the basis of a burglary charge. State v. Courville (Mont. 1989), 769 P.2d 44, 48. While Feldt acted improperly in taking the money from the safe, his entry into T. C. Foods was authorized by management. Feldt was properly charged and convicted for theft, but the State failed to meet the "unlawful entry" element of the burglary statute and this Court's previous holding under Starkweather.

- 4 -

Finally, the State argues that the requirement of a trespassory entry under <u>Starkweather</u> is no longer accurate under the new burglary statute. We find little merit in the State's argument, since the Criminal Code Commission specifically endorsed the Court's holding in <u>Starkweather</u> in rewriting the burglary statute. The Criminal Law Commission specifically codified the <u>Starkweather</u> decision when it wrote § 45-6-204, MCA:

> . . . or as defined in § 94-6-201 entering or remaining unlawful.
>
> This definition is meant to exclude from burglary the servant who enters an employer's house meaning to steal silver; the shoplifter who enters the store during business to steal from the counter; the fireman who forms the intent as he breaks down the door of the burning house to steal some of the householder's belongings; and similar acts in which the defendant is lawfully on the premises.
>
> Where breaking is not required, there has been a tendency to hold that guilt may be established by proof that the prescribed intent was secretly entertained in the mind of the entrant although apart from the secret intent, the entrance at that time and place would have been authorized. For example, in People v. Brittain, 142 Cal. 8, 75 P. 314, it was held that one could be convicted of burglary for entering a store with larcenists intent. The Commission rejects this view and approves the decision on State v. Starkweather, 89 Mont. 381, 297 P. 181 (1931) as a more practical result.

Criminal Law Comm. Comments at 236-237.

The defendant had access to T. C. Foods and did not "enter or remain unlawfully" as defined in § 45-6-201, MCA. Since there was no unlawful entry, the defendant's actions do not constitute a burglary as defined in § 45-6-204, MCA. We reverse the burglary conviction. The theft conviction was not appealed. The sentence imposed upon Feldt for the

District Court is modified to strike therefrom the penalty assessed for burglary, and as modified, the sentence is affirmed.

_____ John C. Sheehy
                                          Justice

We Concur:

_____
'Chief Justice

_____ John Conway Harrison

_____

_____ William E. Hunt

_____
Justices

- 6 -

Justice L. C. Gulbrandson, dissenting.

I respectfully dissent. The trial judge, in Finding of Fact Number 6 found:

> T.C. Foods store was closed for business when the defendant entered said store and took the money. Defendant did not have permission to enter the store at that time and he did not have permission to take the money.

In my view, there is sufficient evidence in the record to affirm the conviction for burglary. The manager of T.C. Foods store had personally hired the defendant and knew the defendant's work schedule. At trial, the manager testified as follows:

> Q. Now, the Defendant, Charles Matthew Feldt, even though he is an employee of your store, did he have your permission to enter the store after hours?
>
> A. No.
>
> . . .
>
> Q. And, if the Defendant was not working a shift on Sunday night before you arrive at the store Monday morning, then technically, isn't it correct, if at all, that an employee in his position would not have permission to go back and turn the coffee off or anything like that?
>
> A. Right.
>
> Q. Because he wouldn't have been working that shift, isn't that my understanding?
>
> A. Yes.
>
> Q. So, he really can't have any permission at all to go into the T.C. Foods between the times you closed on

Sunday and you opened on Monday, isn't that my understanding of it?

A. Yes.

Q. He didn't have permission to go into the store for any purpose such as turning the alarm on, or turning the coffee off, maybe to lock a door, things like that. Isn't that my understanding of the situation?

A. Yes.

Testimony at trial established that the defendant had not worked on the Sunday preceding the incident, and he was not scheduled to work Monday, the day of the incident.

The defendant testified personally as follows:

Q. Now, you had nobody's permission to go into the store at that time; isn't that correct?

A. Not at that time.

The foregoing testimony, in my view, supports the trial judge's finding that defendant did not have permission to enter the store at that time. The record as a whole supports the trial judge's verdict that the defendant was guilty of burglary.

The majority opinion, in my view, has disregarded State v. Courville (Mont. 1989), 769 P.2d 44, 46 St.Rep. 338, wherein this Court stated:

A verdict of acquittal may be directed in favor of the defendant only if no evidence exists upon which to base a guilty verdict. See State v. Matson (Mont. 1987), 736 P.2d 971, 44 St.Rep. 874; State v. Whitewater (Mont. 1981), 634 P.2d 636, 38 St.Rep. 1664; and § 46-16-403, MCA. The foregoing testimony of T. B. regarding Courville's entry was sufficient for the case to go to the jury. . .

8

> Even had the jury found that T. B. may have invited Courville to sleep downstairs on her couch, that invitation certainly did not include going up to her bedroom in order to choke and sexually assault her. Such conduct exceeds any reasonable privilege and the trial court properly let the burglary charge go to the jury for determination. See also State v. Manthie (1982), 197 Mont. 56, 641 P.2d 491; State v. Watkins (1974), 163 Mont. 491, 518 P.2d 259 ("when a person exceeds the limits of his privilege . . . he thereby transforms his original invited presence into a trespass that can form the basis of a burglary charge.")

Courville, 769 P.2d at 47-48. See also State v. Christofferson (Mont. 1989), 775 P.2d 690, 46 St.Rep. 1049.

I would affirm.

_____
Justice

Justice R. C. McDonough:

I concur in the foregoing dissent.

_____
Justice

Chief Justice J. A. Turnage:

I concur in the dissent of Justice Gulbrandson. It is unfortunate that prosecuting attorneys persist in filing burglary charges when, as in this case, there are facts that clearly establish a separate felony and no useful purpose is served in the administration of justice in filing an additional charge of burglary.

_____
Chief Justice

9