JUSTICE NELSON
specially concurs and dissents.
I concur with all that is said and in our decision on issues (a) through (e). I dissent from our decision on issue (f), regarding the allegations of sexual intercourse without consent made by K.C. against her former husband, Chad Reddig.
At the outset, given the specific provisions of Montana’s Rape Shield Statute, § 45-5-511(2) and (3), MCA, and the very narrow limitations under which evidence concerning sexual conduct of the victim is admissible, none of which are at issue here, I have serious reservations about the correctness of our decision in State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193.
That case stands presently as the law of Montana, however, and having expressed my initial concern, I nonetheless, believe that we have misapplied the rule in Anderson. My disagreement with our *360 decision in the instant case flows from what I view is an expansion of the sort of evidence that is admissible under the Anderson rationale.
In Anderson, prior to the incident there at issue, the victim made accusations of unlawful sexual conduct against an individual (Bratcher) and, as a result, criminal charges were actually brought against that individual. The criminal charges were dismissed without any actual adjudication of the truth or falsity of the accusations. However, the allegations underlying those charges were still disputed by Bratcher at the time of Anderson’s trial. Anderson, 686 P.2d at 200. Moreover, we pointed out that Anderson’s offer to have Bratcher’s attorney testify that Bratcher had denied the charges was irrelevant because the attorney's testimony was inadmissible on the ground that mere denial does not establish falsity and because the testimony would have been inadmissible hearsay under Rule 801(c) and 802, M.R.Evid. Anderson, 686 P.2d at 200. We concluded,
In short, the offered evidence would not have been probative of R.F.’s inclination for truthfulness or untruthfulness, as maintained by defendant, but certainly would have placed a prejudicial stamp on her general character and reputation ... [and that this] ... irrelevant, prejudicial evidence would have shifted the focus of trial away from its central purpose and thus had to be barred.
Anderson, 686 P.2d at 201.
In the instant case, the offered evidence is even more tenuous. Here, no criminal charges were filed against KC.’s former husband as a result of K.C.’s allegations of non-consensual sexual intercourse. It does not appear that she even made these allegations to the authorities, but rather that she made her statements to acquaintances. KC.’s former husband, Reddig, disputed KC.’s allegations, but his mere denial does not establish falsity. Anderson, 686 P.2d at 200. K.C. maintained that the accusations were accurate, and the actual truth or falsity of those allegations — which never even rose to the level of criminal charges — was at no time adjudicated prior to the instant proceedings. It appears from the briefs that the evidence at the in camera hearing basically involved a swearing match between K.C. and the Toews, who claimed she had recanted the accusations against Reddig.
In my view, our requirement in Anderson that, to be admissible, evidence of prior charges must have been adjudicated to be true or false, contemplates first, that criminal charges were actually filed on a prior occasion against someone other than the defendant in the proceeding then at issue on the basis of the victim’s accusations, and *361 second, that there was an adjudication on the merits of those charges that ended in a final judgment or verdict that the charges were false. Proof of the false accusations must then still be shown to be probative of the state of mind, motive or biases respecting the victim’s current allegations — not simply as a general attack on her character, and, in addition, such evidence must be more probative than prejudicial.
The in camera hearing referred to in Anderson and now required as a result of our decision here should be limited to the factual and legal determinations discussed in the preceding paragraph. To allow, as we have here, the merits of the victim’s prior, disputed accusations to be “adjudicated,” in a summary in camera hearing, as part of an unrelated criminal trial, for the sole purpose of allowing the defendant to offer testimony impeaching the victim’s current testimony, accomplishes in spades exactly what the Rape Shield Statute and our decisions in Higley, Anderson and their progeny sought to avoid — a trial of the victim within the trial of the current defendant.
Indeed, here, in addition to the court’s in camera “adjudication” there will be a second “trial within a trial.” I assume that our opinion does not permit the trial judge to instruct the jury that he has found the victim’s prior accusations to be false. Accordingly, when those prior accusations are brought into the current trial in the context of the victim, on cross-examination, admitting she made the accusations, that they were true and that she did not recant and the Toews then testifying that she did recant, the jury will have to “adjudicate” the truth or falsity of the prior accusations a second time in another mini-trial of the victim’s character and credibility. This procedure not only flies directly in the face of the prior “adjudication” requirement ofAnderson, (we have never held that the current trial jury is allowed to decide the truth or falsity of the prior charges), but, obviously, this procedure also shifts the focus of the jury away from the merits of the current charges against the defendant — again contrary to the purpose of the Rape Shield Statute and rulings under our prior case law.
Contrary to the implication in the opinion of the Court, the in camera hearing in Anderson did not adjudicate the merits of the prior charges which the complaining witness had made against Bratcher. Rather, the hearing in that case went simply to the reasons why such charges had not been adjudicated to be true or false in a previous trial on the merits. Because the testimony at the Anderson in camera hearing demonstrated that the prior accusations had not been proven false or admitted to be false, (as opposed to whether the charges were true or false), we concluded that the trial court properly rejected *362 Anderson’s attempts in his trial to prove the falsity of the prior charges and that the court properly excluded evidence of the victim’s prior accusations. Anderson, 686 P.2d at 201. The approach which I have suggested here is precisely the same. The majority’s statements to the contrary, Anderson did not sanction a trial of merits of the victim’s prior accusations within the trial of her allegations against the current defendant. That case stands for a much narrower procedure than we have adopted here.
While the defendant’s Sixth Amendment right of confrontation is an important one, we have also been careful to balance that right against those of the victim and have held that
[t]he Sixth Amendment is not absolute, and “may bow to accommodate other legitimate interests in the criminal trial process.”
State v. Steffes (1994), 269 Mont. 214, 230, 887 P.2d 1196, 1206, (citing State v. Howell (1992), 254 Mont. 438, 445-46, 839 P.2d 87, 91.) See also State v. Stuit (1994), 268 Mont. 176, 183, 885 P.2d 1290, 1295 (collecting cases). I fail to see how this defendant’s “enjoyment of the worth of his constitutional right to confront witnesses” is restricted by requiring in the instant case the same sort of narrow, balanced approach that we approved in Anderson.
In Hughes v. Raines (9th Cir. 1981), 641 F.2d 790, the defendant asserted that his right to confrontation was denied when the trial court precluded him from questioning the complaining witness regarding an attempted rape accusation she had previously made against another person. The Ninth Circuit Court of Appeals, stating that the right to confront witnesses is not unlimited, concluded that the object of the intended cross examination in Hughes was not to establish bias against the defendant, but was merely to attack the general credibility of the witness on the basis of an unrelated prior incident. Hughes, 641 F.2d at 793. Thus, the Court of Appeals held that the trial court’s limitation of cross examination on this issue was not a violation of the defendant’s confrontation rights.
The same result should obtain here, given that the defendant has failed to demonstrate, and the majority has failed to explain, how exactly KC.’s prior allegations against her former husband are probative of her state of mind, motive or biases in making her current accusations. Anderson, 686 P.2d at 201. Purely and simply, and contrary to Hughes, we are allowing the defendant here to attack KC.’s character and credibility on the basis of mere prior accusations that remain disputed.
*363 Finally, it is not subject to serious dispute that many rapes presently go unreported and unprosecuted (especially on college campuses) simply because the victims of those assaults fear being victimized a second time by the criminal justice system. For that reason, Montana’s Rape Shield Law and, until now, our cases have very narrowly limited the circumstances under which inquiry may be made of the victim regarding sexual matters not involving the current accused. Our decision here is supported by neither source of authority and is, decidedly, a giant step backward to a time when we instructed juries that, where consent is at issue, “the charge of rape is easily made and difficult to refute” and requiring the rape victim’s testimony to be viewed with caution. See State v. Smith (1980), 187 Mont. 245, 609 P.2d 696 (holding that the trial court committed reversible error in failing to so instruct) and State v. Liddell (1984), 211 Mont. 180, 685 P.2d 918, (overruling Smith).
I would hold that evidence of K.C.’s prior accusations against Reddig is inadmissible, and I dissent from our failure to do so.
JUSTICE GRAY concurs in the foregoing special concurrence and dissent.